UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:

| | |
|---|---|
| PAUL REVERE, III | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| DISCOVER FINANCIAL SERVICES, DFS | ) |
| SERVICES, LLC, and DISCOVER BANK | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES PURSUANT TO 47 U.S.C. Sec. 227 et seq.
(TELEPHONE CONSUMER PROTECTION ACT)**

**DEMAND FOR JURY TRIAL**

**<u>Introduction</u>**

1.      PAUL REVERE, III ("Plaintiff") brings this action for damages, injunctive relief, and

any other available remedies resulting from the collective actions of the Defendants Discover

Financial Services, DFS Services, LLC, and Discover Bank (collectively "Defendants") in

negligently, knowingly, or willfully calling Plaintiff on his cellular telephone and other

telephones without his prior consent in violation of the Telephone Consumer Protection Act.

**Jurisdiction**

2.      This court has jurisdiction under 28 U.S.C. 1332 because Plaintiff seeks statutory damages in excess of $75,000.

3.      Venue is proper because the Defendant resides in the district and because a substantial part of the events giving rise to the claim occurred within Massachusetts.

**Parties**

4.      Paul Revere, III, is a natural person residing in Massachusetts since October, 1997.

5.      The Defendant Discover Financial Services, Inc., is a Delaware corporation and parent company of the Defendants DFS Services, LLC, and Discover Bank which also are Delaware corporations and/or limited liability companies.

6.      The Defendants do business throughout the United States including within the commonwealth of Massachusetts.

**The Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. 227**

7.      In 1991, Congress enacted the TCPA in response to complaints regarding abusive

telephone practices.

8.      The TCPA regulates the use of automated dialing systems and systems which leave
"automated voice messages."

9.      The TCPA prohibits the use of automated dialing systems or systems which use an
artificial or prerecorded voice to call any telephone number assigned to a cellular service for
which the called party is charged for the call without the prior consent of the called party. 47
U.S.C. 227(b)(1)(A).

10.     The TCPA provides for a private right of action for injunctive relief, actual damages or
$500.00 for each call that negligently violates the TCPA whichever is greater, and for up
$1,500.00 for each call that knowingly or willfully violates the TCPA. 47 U.S.C. 227(b)(3)

11.     On January 4, 2008, the Federal Communications Commission ("FCC") issued a
Declaratory Ruling affirming its prior decision that autodialed phone calls and calls that leave a
prerecorded or artificial message by a creditor are permitted to a cellular phone only if the calls
are made with the prior express consent of the party. *In the Matter of Rules and Regulations
Implementing the Telephone Consumer Protection Act of 1991,* FCC CG Docket No. 02-278
(January 4, 2008).

12.     According to the FCC, "prior consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.*

13.     The burden is on the defendant in a TCPA matter to demonstrate that the plaintiff gave his express consent to call his cell phone with automated dialing system or system which uses an artificial or prerecorded voice. *Id.*

**Factual Allegations**

14.     At all relevant times, Plaintiff Revere was an individual residing in the commonwealth of Massachusetts, and, at all relevant times, was a "person" as defined by 47 U.S.C. 153(10).

15.     In 1990, while resident of the state of Michigan, the Plaintiff applied for and obtained a "Discover Card" from the Defendants with the account number XXXX-XXXX-XXXX-4216 (the "First Discover Account")

16.     At the time which Plaintiff applied for the First Discover Account, the Plaintiff did not own a cellular phone.

17.     Plaintiff did not provide a cellular phone number at the time which he obtained the First

Discover Account nor did he consent to being called on any cellular phone which he owned in any manner and, particularly, by automated dialing systems or systems which use an artificial or prerecorded voice.

18.     In October, 1997, the Plaintiff moved to and established residency in the commonwealth of Massachusetts.

19.     Within a short time, thereafter, Plaintiff obtained a cellular phone with the number 508-237-1620.

20.     At all relevant times, the cellular phone was subject to a contract with Verizon Wireless which the Plaintiff was "charged for the call" within the meaning of 47 U.S.C. 227(b)(1)(A) as Plaintiff was charged on a minutes used basis.

21.     In 2000, Plaintiff obtained a "Gold Discover Card" from the Defendants with the account number XXXX-XXXX-XXXX-9215 (the "Second Discover Account").

22.     Plaintiff did not provide a cellular phone number at the time which he obtained the Second Discover Account nor did he consent to being called on any cellular phone which he owned in any manner and, particularly, by automated dialing systems or systems which use an artificial or prerecorded voice.

23.     The Plaintiff is an attorney admitted in state and federal courts in Massachusetts.

24.     Since moving to Massachusetts in October, 1997, Plaintiff has engaged in the practice of law as a sole practitioner with a concentration in environmental matters and real estate development.

25.     All of Plaintiff's income derived from his marketing, sales, and performance of legal services.

26.     In December, 2005, Plaintiff's home was wholly destroyed by fire.

27.     The fire and work rebuilding his family's home severely impacted Plaintiff's ability to develop new work for his legal practice.

28.     Additionally, a number of Plaintiff's clients suffered losses in 2007 and 2008, and were unable to pay their legal bills due to the down term in the economy.

29.     By late 2007, Plaintiff was falling behind on his payment on both the First Discover Account and the Second Discover Account.

30.     Each Discover account had a payment due date which fell on the second or third day of each month.

31.     Whenever a payment was not made by seven days after the due date (*i.e.,* by the ninth or tenth day of each month), Plaintiff would, beginning on the eighth day, receive eight calls from the Defendants per day per phone line at his office telephone number (508-778-7126), his home telephone number (508-778-5769), and his cellular telephone number (508-237-1620) resulting in 24 telephone calls per day.

32.     The telephone calls were made sequentially in groups of 3 with one call to each number unless the call was answered by a human at any time at which point the three call sequence would stop, but would resume later in that day or the next until a payment was made.

33.     The calls generally were made between 9:00 a.m. (EST) and 9:00 p.m. (EST).

34.     The telephone calls were made by an automated dialing system that attempted to detect whether the phone call was answered by a human or answering/voicemail machine.

35.     In particular, if a phone call was answered by the Plaintiff, there would be a short pause with silence of about five seconds or more and then usually a customer service agent of Defendants would come onto the line.

36.     The customer service agent of Defendants was never immediately on the phone line when the call was answered by the Defendant.

37.     The customer services agent would answer in a manner such that it was apparent that the agent did not dial the number, but rather was picking up a phone call which was automatically transferred to the agent by the automated dialing system when answered by the Plaintiff.

38.     In particular and for every call that was answered by the Plaintiff, there would be a delay allowing time for the answer to be detected, the agent to pick up the call, and for the agent to determine relevant information on who they were supposed to be speaking to before they would speak into the phone.

39.     Thus, the customer service agent usually would come onto the call after approximately five seconds, state "hello" followed by a pause of a few more seconds, and then a request to speak to "Paul Revere."

40.     An automated artificial robotic sounding voice (which may have been prerecorded) often stated: "Please wait" or "please hold," during the period between a human answer and the customer service agent picking up the line, or the line would be disconnected by the Defendants if a customer service agent failed to pick up the telephone line with ten to fifteen seconds.

41.     If the call was answered by an answering machine or voicemail, the automated dialing system of the Defendants would leave an artificial robotic style voice (which may have been actually a prerecorded voice) that left the message: "Please call Discover Card."

42.     A few times (less than 5 percent), the automated dialing system would not properly recognize that the phone was answered by a machine or a human resulting in: (i) a human answered phone call being greeted with an artificial voice (see para. 41) stating: "Please call Discover Card," or (ii) answering machine or voice mail having a delay of approximately five seconds and then a customer service agent's voice stating "Hello" or words to that effect followed by either a disconnection of the phone call or a request to call Discover Card.

43.     These automated telephone calls were made by various number registered to Defendants in Utah including, but not limited to: 801-902-2414, 801-902-7032, 801-902-3152, and 801-902-2429.

44.     This pattern of 24 calls per day seven days per week including 8 calls per day to the Plaintiff's cell phone number would continue until Plaintiff paid the monthly payment for both Discover accounts.

45.     Based upon phone records, the Plaintiff received calls using an automated dialing system

9

and/or leaving an artificial voice to his cellular phone number as follows:

| **Month** | **Number of Calls** |
|---|---|
| April, 2007 | 25 |
| May, 2007 | 0 |
| June, 2007 | 11 |
| July, 2007 | 37 |
| Aug., 2007 | 0 |
| Sept., 2007 | 0 |
| Oct., 2007 | 0 |
| Nov., 2007 | 61 |
| Dec., 2007 | 37 |
| Jan., 2008 | 12 |
| Feb., 2008 | 10 |
| Mar., 2008 | 37 |
| Apr., 2008 | 82 |
| May, 2008 | 0 |
| June, 2008 | 178 |
| July, 2008 | 104 |
| Aug., 2008 | 138 |
| Sept., 2008 | 46 |
| Oct., 2008 | 125 |

| | |
|---|---|
| Nov., 2008 | 82 |
| Dec., 2008 | 148 |
| Jan., 2009 | 148 |
| Feb., 2009 | 177 |
| Mar., 2009 | 212 |
| Apr., 2009 | 148 |
| May, 2009 | 159 |
| Jun., 2009 | 226 |
| Jul., 2009 | 299 |
| Aug., 2009 | 132 |
| Sept., 2009 | 68 |

46.    Based on the foregoing, Plaintiff received at least 2567 telephone calls using an automated telephone dialing system and/or leaving an a message with an artificial or prerecorded voice to his cellular phone in the 22 month period from December 1, 2007, to September 30, 2009, or approximately 117 calls per month.[1]

47.    Including his office and residential line, Plaintiff received at least 7700 telephone calls

---

[1] The December 1, 2007, date is four years prior to the filing date of Bradley v. DFS Services. Docket No. 4:11-cv-5746-YGR (N.D. Cal.) which sets the applicable statute of limitations in this matter.  Plaintiff excluded himself from the class in *Bradley* and in the related case of Steinfeld v. Discover Financial Services, et al., Docket No. Docket No. 3:12-cv-01118-JSW on January 8, 2014.

using an automated telephone dialing system and/or leaving an a message with an artificial or prerecorded voice in the 22 month period from December 1, 2007, to September 30, 2009, or approximately 351 calls per month.

48.     The calls were not made for an "emergency purpose" within the meaning of the TCPA.

49.     On June 26, 2007, the FCC issued a citation to Defendants for violations of the TCPA finding that it made prerecorded telephone calls to consumers who "had not expressly invited or authorized the call" and stated that the FCC could penalize the Defendants through the imposition of "monetary forfeitures" if it violated the TCPA "in any manner described herein."

50.     Notwithstanding, the Defendants made at least 2567 telephone calls to Plaintiffs cellular phone and 7700 telephone calls to all of Plaintiffs' telephones in the period from December1, 2007, to September 30, 2009, following the citation even though Plaintiff was made payments to the Defendants within 30 days of the due date in all, but the last month of the time period.

## COUNT I - NEGLIGENT VIOLATION OF THE TCPA

51.     Plaintiffs repeat the allegations in paragraphs 1 through 50 set forth above and further allege as follows.

52.     The actions of Defendants as set forth in the preceding paragraphs constitute numerous and multiple negligent violations of the TCPA.

53.     The Defendants negligently violated the TCPA entitling Plaintiff to an award of statutory damages of $500.00 for each and every telephone call to Plaintiff placed in violation of the TCPA.

54.     Plaintiff also may seek injunctive relief prohibiting such conduct by the Defendants.

## COUNT II - KNOWING OR WILLFUL VIOLATION OF THE TCPA

55.     Plaintiffs repeat the allegations in paragraphs 1 through 54 set forth above and further allege as follows.

56.     The actions of Defendants as set forth in the preceding paragraphs constitute numerous and multiple knowing and/or willful violations of the TCPA.

57.     The Defendants knowingly and/or willfully violated the TCPA entitling Plaintiff to an award of statutory damages of up to $1,500.00 for each and every telephone call to Plaintiff placed in violation of the TCPA.

58.     Plaintiff also may seek injunctive relief prohibiting such conduct by the Defendants.


WHEREFORE, Plaintiffs request that this court enter judgment as follows for:

a.      Damages of up to $1,500 for each and every telephone call to Plaintiff placed in violation of the TCPA.

b.      An injunction prohibiting further violations of the TCPA.

c.      Costs of litigation and reasonable attorneys fees

d.      Such other relief as this court deems meet and just under the circumstances.

Respectfully Submitted,

/s/ Paul Revere, III

Paul Revere, III
(BBO #636200)
Law Offices of Paul Revere, III
226 River View Lane
Centerville, Massachusetts 02601
(508) 237-1620
Revereiii@aol.com

Dated: January 8, 2014